# IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF KANSAS

J.C. HUNT

          **Plaintiff,**

v.                                         **Case No. 05-3004-JWL**

**ROBERT SAPIEN,** *et al.*

          **Defendants.**

## MEMORANDUM AND ORDER

This case concerns a 42 U.S.C. § 1983 claim filed by Plaintiff J.C. Hunt against various prison officials at the El Dorado Correctional Facility. Based on his confinement in administrative segregation[1] for over 850 days, Mr. Hunt alleges a constitutional deprivation of his right to due process in violation of the Fourteenth Amendment. In its previous order (doc. 97), the court granted defendants' renewed motion for summary judgment.[2] The court

---

[1] In this motion, Mr. Hunt consistently states that he was placed in "Kansas' Super Max Facility" rather than referring to administrative segregation. Whether there is any significance in this difference is not apparent to the court. The pretrial order in this case (doc. 72) makes no mention of "super max" and only refers to administrative segregation. Accordingly, to the extent any argument being made by Mr. Hunt regarding "super max" placement attempts to expand his claim, he is not entitled to do so because it was not preserved in the pretrial order. *See Kay-Cee Enterprises, Inc. v. Amoco Oil Co.*, 45 F. Supp. 2d 840, 846-47 (D. Kan.1999)("'The pretrial order supersedes the pleadings and controls the subsequent course of litigation.'")(quoting *Hullman v. Board of Trustees of Pratt Comm. College*, 950 F.2d 665, 667 (10th Cir. 1991); Fed. R. Civ. P. 16(e)).

[2] The full factual background of this case is set forth in the court's prior decision and will not be repeated here. *See Hunt v. Sapien*, — F. Supp. 2d —, 2007 WL 942208 (D. Kan. 2007).

determined the defendants were entitled to qualified immunity on Mr. Hunt's individual capacity claims. Further, because it found that Mr. Hunt failed to establish a protected liberty interest, he could not show a constitutional due process violation by defendants; thus, the court concluded, the defendants were entitled to summary judgment on any official capacity claims as well.

This matter is currently before the court on Mr. Hunt's motion for reconsideration (doc. 100). Although Mr. Hunt's motion is timely under Federal Rule of Civil Procedure 59(e), it is without merit. The court did not commit manifest error in its previous order, as Mr. Hunt argues. Accordingly, the court will deny the motion for the reasons stated below.

## I.    Standard

The Federal Rules of Civil Procedure do not provide a mechanism pursuant to which a party may file a "motion to reconsider." *United States v. Emmons*, 107 F.3d 762, 764 (10th Cir. 1997) (quoting *Hatfield v. Board of County Comm'rs for Converse County*, 52 F.3d 858, 861 (10th Cir. 1995)). Instead, the court construes such a filing as either a Rule 59(e) motion or a Rule 60(b) motion, depending upon the timing of the filing of the motion. *Id.*

A motion to reconsider filed within ten days after entry of judgment is considered a Rule 59(e) motion. *Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000). Grounds "warranting a motion to reconsider include (1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice." *Id.* (citing *Brumark Corp. v. Samson Resources Corp.*, 57 F.3d 941, 948 (10th Cir.

2

1995)).  Thus, a motion for reconsideration is appropriate where the court has misapprehended the facts, a party's position, or the controlling law.  *Id.*  It is not appropriate to revisit issues already addressed or advance arguments that could have been raised in prior briefing.  *Id.* (citing *Van Skiver v. United States*, 952 F.2d 1241, 1243 (10th Cir. 1991)).

As a pro se litigant, Mr. Hunt is entitled to leniency, and the court liberally construes his allegations.  *See Oltremari v. Kan. Soc. & Rehab. Serv.*, 871 F. Supp. 1331, 1333 (D. Kan. 1994). The court, however, may not become an advocate for Mr. Hunt.  *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

## II.    Timeliness

The defendants argue that Mr. Hunt's motion should be denied because it was not filed within the appropriate ten day deadline under Rule 59(e).  However, the court finds Mr. Hunt's motion was timely filed due to the "prison mail-box rule."  The prison mail-box rule requires the court to deem Mr. Hunt's motion filed on the date on which he presented it to prison officials for mailing.  *See Dunn v. White*, 880 F.2d 1188, 1190 (10th Cir. 1989)(applying the prison mail-box rule, as set out by the Supreme Court in *Houston v. Lack*, 487 U.S. 266 (1988)).  Here, the court's order granting summary judgment was filed on March 29, 2007, and Mr. Hunt presented his motion for reconsideration to prison officials on April 9, 2007.  Applying the prison mail-box rule, the Rule 59(e) ten day filing period expired after April 12, 2007.  *See* Fed. R. Civ. P. 6(a)(when calculating the Rule 59(e) ten day period relative to the court's order, the day the order was filed and intermediate Saturdays, Sundays and legal holidays are not included in the computation).  Thus, Mr. Hunt's order was presented to prison officials within ten days of the

3

court's order and the court will treat it as a Rule 59(e) motion.  Because this procedural defect is the only argument advanced by the defendants in opposition to Mr. Hunt's motion, Mr. Hunt urges the court to grant the motion as unopposed.  However, because Mr. Hunt has offered no grounds warranting a motion to reconsider, the court denies his motion.[3]

## III.   Analysis

Mr. Hunt alleges that the court committed four manifest errors of fact and law in its prior order by: (1) finding that Mr. Hunt failed to establish a protected liberty interest; (2) finding that there was no clearly established law regarding Mr. Hunt's protected liberty interest in being placed in administrative segregation; and (3) failing to construe Mr. Hunt's pro se pleadings liberally.

### A.   *Protected Liberty Interest*

In this case, Mr. Hunt alleges that the defendants violated his constitutional right to due process under the Fourteenth Amendment.  To establish such a due process violation, Mr. Hunt must first show that the defendants deprived him of a constitutionally protected liberty interest by placing him in administrative segregation.  *See Steffey v. Orman*, 461 F.3d 1218, 1221 (10th Cir. 2006)("A due process claim under the Fourteenth Amendment can only be maintained where there exists a constitutionally cognizable liberty or property interest with which the state has interfered.").  Although due process protections extend to prisoners, the extent of that

---

[3]Counsel for the defendants are cautioned that it is not good practice to rely solely on a procedural defense and not respond on the merits–especially where, as here, that defense is without merit.

protection is significantly less than that guaranteed to non-prisoners. *Estate of DiMarco v. Wyoming Dept. of Corr.*, 473 F.3d 1334, 1339 (10th Cir.2007)(citing *Wolff v. McDonnell*, 418 U.S. 539, 555-557 (1974)). "[T]he Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement" for prisoners; nonetheless, "a liberty interest in avoiding particular conditions of confinement may arise from state policies or regulations." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). The Supreme Court has instructed, however, that unless the conditions of confinement "impose atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life[,]" state regulations or policies do not create a liberty interest for prisoners in the conditions of confinement. *Sandin v. Conner*, 515 U.S. 472, 484 (1995). Furthermore, the Tenth Circuit has explicitly held that "'the transfer of an inmate to less amenable and more restrictive quarters for non-punitive reasons is well within the terms of confinement ordinarily contemplated by a prison sentence.'" *Pendrod v. Zavaras*, 94 F.3d 1399, 1406 (10th Cir. 1996)(quoting *Hewitt v. Helms*, 459 U.S. 460, 468 (1983)).

In its previous order, the court applied the test recently set forth by the Tenth Circuit in *Estate of DiMarco*, 473 F.3d at 1342 (10th Cir. 2007), and found that Mr. Hunt failed to establish that his placement in administrative segregation implicated a protected liberty interest. *Hunt v. Sapien*, — F. Supp. 2d —, 2007 WL 942208, at \*4-5 (D. Kan. 2007). In *Estate of DiMarco*, the Tenth Circuit set forth the following factors to be considered when making such a determination: (1) whether the segregation relates to or furthers a legitimate penological interest, such as safety or rehabilitation; (2) whether the conditions of placement are extreme;

5

(3) whether the placement increases the duration of confinement; and (4) whether the placement is indeterminate. *Estate of DiMarco*, 473 F.3d at 1342.   In his motion to reconsider, Mr. Hunt only takes issue with the court's resolution of the first and third factors.  He does not dispute the court's finding that the conditions of his confinement were not extreme or that his placement was not indeterminate.

First, Mr. Hunt specifically argues that the court committed manifest error because his "arbitrary" placement in administrative segregation was not justified as he was placed there for acts "noted several years prior" and "not for any current act or investigation of any current act." Mr. Hunt's administrative segregation report stated that he was placed in administrative segregation on January 15, 2003, "due to being an active leader with the BGD organization.  He is known to strong arm weaker inmates and plays major games with staff.  He plays the role of enforcer for the organization and has been named as the person carrying out 'violations' that are handed down on behalf of the organization.  He has a past history in which he was involved in attacking a group of white supremacist [sic] in the facility.  During the attack he was observed giving orders to other inmates."  This language in the administrative segregation report is virtually identical to a 2001 email[4]  sent from an official at the Hutchinson Correctional Facility

---

[4]The email states that "Hunt is an active leader within the BGD.  Currently it is believed that he is the number 3 person in the organization.  He is known to strong arm weaker inmates and plays major games with staff.  He has no problems lying to your face about his affiliation and activities. He quite often assumes the role of enforcer for the organization and has been named as the person carrying out 'violations' that are handed down on behalf of the organization.  He is also considered to be a major player in the introduction of drugs on behalf of BGD."

to officials at another prison facility, warning them of Mr. Hunt's background.[5]

Mr. Hunt argues that because he has done nothing wrong since the 2001 email, his placement in administrative segregation was unjustified. The court found, however, that Mr. Hunt's placement in administrative segregation was "related to or furthered a legitimate penological interest" because the prison officials had a legitimate reason to believe he was a potential risk to the safety of the other inmates and correctional facility staff, and that finding was not manifest error. *See Estate of DiMarco*, 473 F.3d at 1342 (recognizing that safety of plaintiff and other inmates was a legitimate penological interest).

Mr. Hunt was placed in administrative segregation pursuant to the "other security risk" provision of the Kansas prison regulations, which authorizes such placement if "the inmate . . . [has] engaged in behavior which has threatened the maintenance of security or control in the correctional facility." IMPP 20-104(I)(B)(13). The primary justification given by the defendants for Mr. Hunt's placement in administrative segregation was his prior involvement with gang activities, particularly with a group known as the Black Gangster Disciples. Furthermore, the record indicates that prison officials believed Mr. Hunt had a leadership role in that organization. Notably, in his summary judgment briefings, Mr. Hunt did not deny the previous gang involvement. Rather, he simply argued, as he does now, that his placement and continued retention in administrative segregation was unjustified because he did not engage in

---

[5]Mr. Hunt points out that the 2001 email was apparently sent to prison officials at Lansing Correctional Facility but Mr. Hunt has never been incarcerated at that facility. The court, however, fails to see how this fact, which Mr. Hunt first brought to its attention in this motion, has any effect on the ultimate conclusion that the prison officials were justified in placing him in administrative segregation due to his involvement with a prison gang.

any new activities while in administrative segregation that were security concerns.

Gang violence and activity is clearly a serious problem faced by prison officials. In *Wilkinson v. Austin*, the Supreme Court noted the pervasiveness of gang violence in prison, describing prison security as:

> imperiled by the brutal reality of prison gangs . . . . Clandestine, organized, fueled by race-based hostility, and committed to fear and violence as a means of disciplining their own members and their rivals, gangs seek nothing less than to control prison life and to extend their power outside prison walls. Murder of an inmate, a guard, or one of their family members on the outside is a common form of gang discipline and control, as well as a condition for membership in some gangs. Testifying against, or otherwise informing on, gang activities can invite one's own death sentence.

545 U.S. 209, 227 (2005)(internal citations omitted). Thus, the court will not second guess the prison officials' decision to place Mr. Hunt in administrative segregation as a result of their legitimate security concerns stemming from his involvement with a prison gang. *See Estate of DiMarco*, 473 F.3d at 1342 ("While DiMarco was not deemed a particularly high risk, we cannot discount the prison's concerns about placing her in [the general population, which it] perceived as a potential security problem."). *See also Ricco v. Conner*, 146 F. App'x 249, 255 (10th Cir. 2005)("[W]e must 'afford appropriate deference and flexibility to [prison] officials trying to manage a volatile environment.'")(quoting *Sandin*, 515 U.S. at 482). Accordingly, the court finds it did not commit manifest error in concluding that the prison officials were justified in

placing Mr. Hunt in administrative segregation.

Mr. Hunt also argues that the court committed manifest error by concluding that his placement in administrative segregation did not increase the duration of his confinement. Specifically, Mr. Hunt argues that because prior to his placement in administrative segregation, the Kansas Parole Board had only passed him for one year, but after his placement he was passed for three years, the inference could be drawn that his placement disqualified him for parole.  The court rejects this argument.

Mr. Hunt was placed in administrative segregation on January 15, 2003.  On October 20, 2003, *while he was in administrative segregation*, a parole hearing was conducted and the Kansas Parole Board passed him for parole for one year, until November 2004.  On October 18, 2004, while he was still in administrative segregation, the Kansas Parole Board passed him until November of 2007.  The record indicates that the board made this decision to pass Mr. Hunt for three years because it was not reasonable to expect that parole would be granted at a hearing if held before then because Mr. Hunt presented high risk factors, including his involvement in gang activity while in prison.

The court concludes that, because he was in administrative segregation in October of 2003 when the parole board decided to only pass him for one year, no reasonable inference can be drawn that Mr. Hunt's confinement in administrative segregation caused the parole board to pass him for three years at the subsequent 2004 hearing, particularly in light of the legitimate reasons given by the parole board justifying its decision.  Accordingly, the court concludes it did not commit manifest error in determining that Mr. Hunt's placement in administrative

segregation did not increase the duration of his confinement.

As stated in its previous order, after evaluating the factors set forth in *Estate of DiMarco*, the court concludes that Mr. Hunt has failed to show that his confinement in administrative segregation imposed the sort of "atypical and significant hardship" required to demonstrate a liberty interest in his conditions of confinement. Thus, the court did not commit manifest error in concluding that Mr. Hunt failed to establish a due process violation.

B.    *No Clearly Established Law*

Mr. Hunt argues that this court committed manifest error by finding the law regarding a prisoner's protected liberty interest in being placed in administrative segregation was not clearly established at the time the defendants took the actions complained of by Mr. Hunt. The only support offered by Mr. Hunt on this argument is a citation to the balancing test from *Matthews v. Eldridge*, 424 U.S. 319 (1976). The *Matthews* test, however, is irrelevant to the court's determination that the law was not clearly established regarding Mr. Hunt's protected liberty interest in this case.

"To assess whether an individual was denied procedural due process, courts must engage in a two-step inquiry: (1) did the individual possess a protected interest such that the due process protections were applicable; and, if so, then (2) was the individual afforded an appropriate level of process." *Nard v. City of Oklahoma* City, 153 F. App'x 529, 533 (10th Cir. 2005)(quoting *Watson v. Univ. of Utah Medical Center*, 75 F.3d 569, 577 (10th Cir. 1996)). The *Matthews* test, however, applies only to the *second* prong of the due process evaluation, that is, whether an individual has been provided with the appropriate procedure. *See United States v. Weed*, 389

10

F.3d 1060, 1068 (10th Cir. 2004)("In determining whether procedures comport with due process in the civil context, this court weighs the three factors set forth in *Matthews v. Eldridge*, 424 U.S. 319 (1976)."). Thus, *Matthews* has no bearing on the court's determination that Mr. Hunt failed to establish a protected liberty interest and thus could not satisfy the *first* prong of his due process claim.

Nevertheless, the Tenth Circuit recently held that the law was not clearly established regarding whether a prisoner's confinement in administrative detention implicated a protected liberty interest. *Hill v. Fleming*, 173 F. App'x 664, 670-71 (10th Cir. 2006). In making that finding, the Circuit noted that it "has never held the conditions, duration or restrictions of [administrative detention] presented on appeal created a liberty interest." *Id*. Thus, irrespective of Mr. Hunt's failure to put forth any relevant legal authority or evidence on this issue, the court concludes it did not commit manifest error in finding there was no clearly established law regarding Mr. Hunt's protected liberty interest in remaining free from administrative segregation placement. Accordingly, Mr. Hunt's motion to reconsider is denied with respect to this issue.

C.      *Pro Se Plaintiff*

Mr. Hunt also argues that the court committed manifest error by failing to liberally construe his pro se allegations; however, Mr. Hunt offers no evidence in support of this allegation. Accordingly, the court finds no basis to grant Mr. Hunt's motion to reconsider given the broad, conclusory statement contained in his motion. The court notes that Mr. Hunt was not proceeding pro se when the court entered its order granting defendants' renewed motion for

summary judgment (doc. 97); rather, he was represented by appointed counsel.  Furthermore, the court did in fact liberally construe Mr. Hunt's allegations in this case and even ordered an amendment to the pretrial order to enable Mr. Hunt to dismiss his unexhausted § 1983 claims and proceed only with his exhausted claims (doc. 91).  Thus, the court concludes it did not commit manifest error in this regard.


**IT IS THEREFORE ORDERED BY THE COURT** that plaintiff's motion to reconsider or to alter or amend judgment (doc. 100) is denied.


**IT IS SO ORDERED.**

Dated this 23rd day of May, 2007.

<u>s/ John W. Lungstrum </u>
John W. Lungstrum
United States District Judge